IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| K-W SPECIALTY INSURANCE COMPANY | § § | |
| v. | § § | Civil Action No. _____ |
| PRO GEN FINANCIAL AND INSURANCE SOLUTIONS, INC., AND AVENTUS INSURANCE COMPANY | § § § § | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiff K-W Specialty Insurance Company ("K-W Specialty" or "Plaintiff") and files its Original Complaint for Declaratory Judgment against Defendant Pro Gen Financial and Insurance Solutions, Inc. ("Pro General") and Aventus Insurance Company ("Aventus") (collectively, "Defendants"). Plaintiff respectfully shows the Court as follows:

**I.
PARTIES**

1. K-W Specialty Insurance Company is a company organized under the laws of the State of Delaware, with its principal place of business in Scottsdale, Arizona.

2. Pro Gen Financial and Insurance Solutions, Inc., is a company organized under the laws of the State of California, with its principal place of business in La Crescenta, California, who may be served through its registered agent, John H. Mejia, at 10703 Colebrook Street, Shadow Hills, California, 91040.

3. Aventus Insurance Company is a company organized under the laws of the State of Texas, with its principal place of business in Fort Worth, Texas, who may be served with process through its President, Paul Poston, at its home office at 6801 Calmont Avenue, Fort

Worth, Texas, 76116, or through its registered agent of service, Corporation Service Company, at 211 East 7th Street, Suite 620, Austin, Texas, 78701-3218.

## II.
## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this lawsuit pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

5.  In addition, this Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

6.  Venue is proper in this Court because the parties have irrevocably submitted by contract to the jurisdiction of the United States District Court for the Northern District of Texas, Fort Worth Division.

## III.
## FACTUAL BACKGROUND

7.  Plaintiff seeks a declaratory judgment to determine its rights and obligations under the Non-Standard Automobile Quota Share Reinsurance Contract (the "Contract"), which K-W Specialty, Aventus, and Pro General signed in December 2017. A copy of the Contract is attached as "Exhibit A" to this complaint and is repeated and fully incorporated herein by reference. Under the Contract, Aventus agreed to cede to K-W Specialty, and K-W Specialty agreed to accept, coverage for gross liability under certain insurance policies issued in the State of Florida, for which Aventus is the underwriter and Pro General is the Managing General Agent. Among other things, the Contract provided in pertinent part:

ARTICLE IV

DEFINITIONS

[. . .]

D. "Incurred Loss" means the ceded portion of the following: losses paid, plus reserves for outstanding loss, plus Expense Allowance (as defined herein), plus assessments, plus Extra Contractual Obligations and Loss in Excess of Policy Limits (as those terms are defined herein), plus a reserve for incurred but not reported losses (IBNR) as determined by the Company, plus any debit pursuant to the PREMIUM AND COMMISSION ARTICLE, it being understood and agreed that all losses under Policies with effective or renewal dates during an Underwriting Year shall be charged to that Underwriting Year, regardless of the date said losses actually occur, unless the Contract is terminated on a cutoff basis, in which event the Reinsurer shall have no liability for losses occurring after the effective date of termination.

E. "Loss Adjustment Expense" means expenses assignable to the investigation, appraisal, adjustment, settlement, litigation, defense and/or appeal of specific claims, regardless of how such expenses are classified for statutory reporting purposes. Loss Adjustment Expense shall include, but not be limited to, Declaratory Judgment Expense.

[. . .]

ARTICLE VIII

COVERAGE

A. As respects business subject to this Contract, the Company shall cede and the Reinsurer shall accept all of the Company's gross liability for:

   1) all losses.

   2) Loss in excess of Policy Limits and Extra Contractual Obligations, subject to maximum Underwriting Year aggregate limit of $2,000,000. For the purposes of the commission adjustment the maximum limit stipulated in this subparagraph 2) shall not apply.

[. . .]

B. As respects business subject to this Contract, the Reinsurer shall only be liable for Loss Adjustment Expense arising out of or related to the engagement of one or more replacement administrators pursuant to, and

subject to the limit set forth in, the MANAGING GENERAL AGENT ARTICLE.

[. . .]

## ARTICLE X

PREMIUM AND COMMISSION

[. . .]

B. The Company shall receive as a ceding commission 23% of all Collected Net Written Premium. The Company shall allow the Reinsurer return ceding commission on return premiums at the same rate. In addition to the above, the Company will receive a profit-sharing commission consisting of 50% of the excess of ninety percent (90%) of Earned Premium from inception to date over the sum of the following:

1) Losses and Expense Allowance, as defined herein, incurred (includes reserve for reported and unreported losses and reserve for reported and unreported allocated and unallocated loss adjustment expense); plus

2) Ceding commission paid (excluding commission paid on fees not included in Earned Premium); plus

3) Intermediary fee of 0.5% of Earned Premium.

However, no profit-sharing commission shall be due or owing until cumulative Earned Premium hereunder exceeds five million dollars.
Any profit-sharing commissions due hereunder shall be paid annually within 90 days of the end of each calendar year. The company shall not be required to return any profit-sharing commissions previously received in the case of an error in calculation.

C. In addition to the ceding commission due from the Reinsurer to the Company, the Reinsurer shall pay the Company each Underwriting Year an allowance for expenses associated with Loss Adjustment Expense equal to:

1) 10% of the Earned Premium attributed to Florida Policies, plus a maximum of 3% of such premium to account for incurred legal costs and expense on Florida Polices ("Florida LAE").

8. Between 2018 and 2020, K-W Specialty satisfied its obligations under the Contract to make payments into the Aventus Escrow Account. In turn, Pro General used funds from this account to pay claims on Adventus policies that were the subject of the Contract. For claims paid during this period, certain payments for litigation fees, including attorney's fees and costs, settlement fees, and interest were classified as "Loss Adjustment Expense" ("LAE") and paid pursuant to Article X(C)(1) of the Contract, meaning that such fees were paid from a special allowance into which K-W Specialty contributed a certain percentage (namely, 13%) of earned premiums per year. This annual contribution fully satisfied all K-W Specialty's obligations under the Contract regarding LAE, including the litigation fees mentioned above.

9. In January 2021, Pro General's accounting team unilaterally decided that the payments made for litigation fees had been "mischaracterized" as LAE. Pro General contacted K-W Specialty in March 2021 and notified it that Pro General would recategorize these payments as "incurred losses"—meaning that, K-W Specialty would be responsible for accepting coverage for all such fees in full. Pro General also stated that it would review prior statements and identify payments for litigation fees from 2018 through 2020 and reclassify these payments as claim settlement cost. In response, K-W Specialty objected to Pro General's reclassification of these payments, contended that the Contract clearly categorized these prior payments as LAE, maintained that it had met its obligations under the Contract by making the annual contribution under Article X(C)(1), and refused to make any additional payments.

10. Subsequently, Pro General notified K-W Specialty that it had identified roughly $4.5 million in previous payments made between 2018 and 2020 that, in Pro General's review, had been "mischaracterized" as LAE and should have been categorized as "incurred losses." Pro General demanded immediate payment of this amount. K-W Specialty restated its earlier

position and refused payment, at which point Pro General threatened to cease managing all outstanding claims. Faced with the costs and potential litigation that would have been occasioned by Pro General's withdrawal (which would have substantially exceeded the $4.5 million demand), K-W Specialty paid the demanded amount, reserving its right to challenge Pro General's interpretation of the Contract terms.

## IV.
## DECLARATORY RELIEF SOUGHT

11. K-W Specialty re-alleges and incorporates by reference all preceding paragraphs.

12. An actual controversy of a justiciable nature presently exists between K-W Specialty and Defendants concerning the rights and obligations of the parties pursuant to the Contract with respect to whether certain payments for litigation fees on claims, including attorney's fees and costs, settlement fees, and interest, are properly classified as "Loss Adjustment Expense" ("LAE") under to Article X (C)(1) of the Contract rather than "incurred losses."

13. K-W Specialty seeks a judicial determination that the aforementioned litigation fees were properly classified as "Loss Adjustment Expenses" under the Contract. K-W Specialty also seeks a declaration that it met all its obligations pertaining to these litigation fees by paying to Aventus a percentage of collected premiums as an allowance for LAE expenses pursuant to Article X(C)(1) of the Contract. K-W Specialty further seeks a declaration that the roughly $4.5 million it previously paid to Pro General under duress was not required under the Contract and should be returned to K-W Specialty.

V.
PRAYER

WHEREFORE, Plaintiff K-W Specialty Insurance Company prays that the Court declare that the subject litigation fees are properly classified as "Loss Adjustment Expenses" under the Contract, that K-W Specialty's obligations pertaining to the subject litigations fees have been fully satisfied under Article X(C)(1) of the Contract, and that Defendant Pro Gen Financial and Insurance Solutions, Inc., has no right to the $4.5 million that K-W Specialty previously paid under duress for the satisfaction of its alleged obligations for these fees as claimed by Pro General and that Pro General should return this amount in full to K-W Specialty. K-W Specialty also asks that the Court grant such other and further relief to which it may justly be entitled.

**SHEEHY, WARE, PAPPAS, & GRUBBS, P.C.**

By:   */s/ Travis Cade Armstrong*
      Steven O. Grubbs
      Fed. Adm. No. 21932
      State Bar No. 00796683
      Travis Cade Armstrong
      Fed. Adm. No. 1690801
      Texas State Bar No. 24069312
Two Houston Center
909 Fannin Street, #2500
Houston, Texas 77010-1003
Telephone:  (713) 951-1000
Facsimile:  (713) 951-1199

**ATTORNEYS FOR THE PLAINTIFF**
**K-W SPECIALTY INSURANCE COMPANY**

6504054